**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
:
HARTFORD LIFE INSURANCE          :
COMPANY,                          :
:
            Plaintiff,        :     Civil Action No.: 05-5542 (KSH)
:
      v.                        :     **OPINION**
:
RONALD ROSENFELD, THE NORTH      :
SHORE LIFE AND HEALTH AGENCY,    :
INC., and STEPHEN L. BRENNER, M.D.,  :
:
         Defendants.        :
_____:

**HAYDEN, District Judge**

    This case comes before this Court on Defendant Stephen L. Brenner's motion to abstain, in which he asks for either a dismissal or stay of the action in light of a similar case currently pending before the Supreme Court of the State of New York.[1]  Defendants Ronald Rosenfeld and the North Shore Life and Health Agency, Inc. ("North Shore") have joined in Brenner's motion. For the following reasons, this Court will deny Defendants' motion.

**I.**    **Background**

    In 1987, Brenner allegedly suffered extensive, degenerative injuries to his spine and right arm as a result of a fall down a flight of steps while disembarking an airplane in Denver, Colorado.  Brenner later sued the airline for damages in federal district court, and settled the case

_____

[1] Brenner v. Hartford Life Ins. Co., No. 601630/04.

for an undisclosed amount.  Incident to that suit, Brenner was examined by several doctors who confirmed that his injuries resulted in decreased mobility, strength, and sensation in his right hand, and predicted that these injuries would limit, and eventually end his ability to continue his practice as an orthopaedic surgeon.

Hartford alleges that Brenner, knowing the nature of his condition, colluded with his insurance broker, Rosenfeld, to fraudulently obtain a number of disability insurance policies from 1988 to 1995.  One of these was from Hartford ("the Policy"), which he applied for on December 2, 1992.  Hartford claims that Brenner and Rosenfeld intentionally failed to disclose in the application the total number of disability insurance policies Brenner had at the time, and further intentionally failed to reveal Brenner's pre-existing degenerative spine and arm injuries.  Had it known these facts, Hartford claims, it would have never issued Brenner the Policy.

Hartford did issue the Policy to Brenner, and it became effective on February 1, 1993.[2]  It contained an incontestability clause, which stated that Hartford would not contest any statements made in the application after the Policy had been in effect for two years, excluding any time the applicant was disabled.  In addition, the Policy contained a pre-existing condition clause to the effect that "[i]f disability starts or a loss is incurred more than 2 years after the Date of Issue, [Hartford] will not reduce or deny [a] claim on the ground" that it was a pre-existing condition. (Compl. ¶ 83.)  Brenner paid premiums required by the Policy from 1993 to 2000.

On March 10, 2000, Brenner submitted a claim for benefits under the Policy, alleging that since December 29, 1999 he was no longer able to work as an orthopedic surgeon due to a disability caused by a multi-car accident that exacerbated his previous injuries.  Hartford

---

[2] The parties debate whether the Policy was procured and executed in New York or New Jersey. It is unnecessary for the purposes of this motion for this Court to resolve the issue.

2

approved Brenner's claim and paid him benefits until an investigation revealed the allegedly

inaccurate statements on Brenner's application.  On June 30, 2004, Hartford terminated

Brenner's benefit payments, and informed him that his disability was not covered by the Policy.

Hartford then demanded repayment of $595,840.00 in benefit payments it had already made.

Brenner sued Hartford in the Supreme Court of New York, New York County, on May

28, 2004.  His complaint seeks a judgment declaring that he is disabled under the terms of the

Policy, and that Hartford is obligated to continue paying him benefits.  After an unsuccessful

attempt to remove the case to the Southern District of New York, Hartford filed an Answer in

which it alleged four counterclaims against Brenner: (1) fraudulent misrepresentation, for which

Hartford seeks restitution of benefits paid; (2) a violation of the New Jersey Insurance Fraud

Prevention Act ("IFPA"), N.J.S.A. § 17:33A-4, for which Hartford seeks damages and

restitution; (3) breach of contract (for which Hartford seeks damages) and a declaration of

breach, relieving Hartford from its duty to perform under the Policy and any liabilities under the

Policy; and (4) in the alternative, a declaratory judgment enforcing the pre-existing condition

clause and declaring that it bars Brenner's claim for benefits.

After filing the answer, Hartford moved to dismiss for *forum non conveniens*.  On August

15, 2006, the court denied the motion, rejecting Hartford's argument that several of its witnesses,

specifically doctors who treated him and offered opinions in the Colorado suit, are not within the

reach of the New York court's subpoena power.  (Del Mauro Cert., Ex. Y, at 3-4.)  The court

also rejected Hartford's assertion that New York is an inconvenient forum because the

transactions in the case allegedly took place in New Jersey.  (Id. at 5.)  According to Brenner, the

New York court is currently considering his motion for summary judgment in the case.  On

November 22, 2005, before the New York Supreme Court's ruling on its *forum non conveniens*

motion, Hartford filed the instant lawsuit.  Originally, Hartford's complaint only named

Rosenfeld and his employer North Shore as defendants.  Later, Hartford added Brenner as a

defendant after a Rule 16 conference with Magistrate Judge Falk.  The amended complaint

asserts against Rosenfeld and North Shore claims of (1) fraudulent misrepresentation; (2)

negligence; and (3) violation of the IFPA, and against Brenner, claims that are substantially the

same as those it asserts in its counterclaims in the New York case: (1) violation of the IFPA, for

which Hartford seeks restitution, damages, and a declaration that the Policy is void; (2) breach of

contract, for which Hartford also seeks damages and a declaration that the Policy is void; and (3)

in the alternative, declaratory judgment enforcing the pre-existing condition clause and declaring

it bars Brenner's claim for benefits.

Rosenfeld and North Shore filed an answer denying Hartford's allegations.  Brenner filed

this motion to abstain, requesting that this Court either dismiss or stay the case.  Brenner argues

that Hartford is simply shopping for a forum that will be more likely to apply arguably more

favorable New Jersey law.  Hartford opposes on grounds that the New York case and this federal

case are addressing different parties and different issues.

## II.    Discussion

### A.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), a court may consider only the complaint and exhibits attached thereto.  See

Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  But

here, both sides have presented evidence outside the pleadings.

The Court may in its discretion convert Brenner's motion to dismiss to a motion for summary judgment, and consider this evidence.  See Fed. R. Civ. P. 12(b)(6); Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989).  Instead, the Court will take judicial notice of the evidence relating to the New York state court proceedings, and will not consider all other evidence presented.  See Century Indem. Co. v. Congoleum Corp., 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of relevant state court proceedings, noting that "judicial notice can be taken of certain facts such as that a document was filed, a position taken, [or] an admission or allegation made . . . ." (internal quotation and citation omitted)).

Applying Rule 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If, thereafter, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

### B.    Federal Abstention

As a general rule, federal courts have a "virtually unflagging obligation" to "exercise jurisdiction given them,"[3] and therefore, "'the pendency of an action in [a] state court is no bar to

---

[3] This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.  In their answer, Rosenfeld and North Shore deny that subject matter jurisdiction exists, because they claim the amount-in-controversy requirement of § 1332 is not met. (See Docket Index No. 7, ¶ 5) This Court disagrees.  That requirement is satisfied where the complaint alleges in good faith that over $75,000.00 exclusive of costs and fees is in controversy.  See 28 U.S.C. § 1332(a); Golden v. Golden, 382 F.3d 348, 354-55 (3d Cir. 2004).  Hartford clearly satisfies this standard; its complaint alleges that it paid Brenner $595,840.00 in benefits under the Policy (Amended Compl. ¶ 44), and seeks restitution of that amount due to various alleged violations of the law (id., counts 1-5, 7.).  Furthermore, complete diversity exists, since Hartford is a citizen of

proceedings concerning the same matter in [a] Federal court having jurisdiction . . . .'" Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1983) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)).  Typically, both actions will proceed until "one of them results in a judgment that may be asserted as res judicata in the other." NYLife Distributors, Inc. v. The Adherence Group, Inc., 72 F.3d 371, 376 (3d Cir. 1995).

Nevertheless, under certain circumstances, a district court may abstain from exercising jurisdiction in favor of state court proceedings.  See id.  Relevant here are two abstention doctrines that are "aimed at avoiding duplicative litigation" and "premised on considerations which concern the efficient administration of judicial resources and the comprehensive disposition of cases." Id.  First, Colorado River abstention permits a district court to decline jurisdiction where a parallel state court action is ongoing, and where "exceptional circumstances" exist.  424 U.S. at 817-18.  Second, under the Brillhart abstention doctrine, if the parallel claims sought to be dismissed or stayed seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the district court is permitted to exercise "greater discretion" than is "permitted under the 'exceptional circumstances' test of Colorado River" in determining whether to abstain.  Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494-95 (1942).

### C.   Whether *Brillhart* Abstention Should Be Applied Here

Hartford disputes whether Brillhart abstention is applicable to this case, since Hartford's complaint (1) does not name the Declaratory Judgment Act when seeking declaratory relief, and (2) seeks monetary relief in addition to declaratory relief.

---

Connecticut, Rosenfeld and North Shore are citizens of New York, and Brenner is either a citizen of New York or New Jersey.  Thus, the Court has jurisdiction under § 1332.

6

Hartford first argues that <u>Brillhart</u> should not be applied where a complaint does not explicitly seek relief under the Declaratory Judgment Act.  This Court disagrees.  While Hartford does not invoke the actual name of the Act, or the statute, 28 U.S.C. § 2201, in three counts it does request declaratory relief, and a federal court's authority to grant declaratory relief is necessarily governed by the Declaratory Judgment Act.  <u>See, e.g.</u>, <u>Sankyo Corp. v. Nakamura Trading Corp.</u>, No. 04-1337, 2005 U.S. App. LEXIS 4339, at *8 n.6 (6th Cir. 2005) ("Although [the plaintiff] did not specifically invoke the Declaratory Judgment Act, 28 U.S.C. § 2201, in its complaint, it clearly seeks declaratory relief governed by that statute."); <u>United Food v. Food Employers Council, Inc.</u>, 827 F.2d 519, 524 (9th Cir. 1987) (explaining that the Declaratory Judgment Act created "a new remedy," and put "a new implement at the disposal of the courts" (internal quotations omitted)).  Accordingly, the fact that Hartford's complaint does not specifically invoke the Declaratory Judgment Act is no bar to this Court's application of <u>Brillhart</u> abstention.

Nevertheless, this does not mean that <u>Brillhart</u> abstention necessarily applies to a complaint that seeks both declaratory and monetary relief.  Brenner contends that <u>Brillhart</u> should apply to the entire action because the claims seeking declaratory relief are intertwined and dependent upon those seeking monetary relief.  At least one district court in this jurisdiction has followed this approach.  <u>See</u> <u>Franklin Commons East P'ship v. Abex Corp.</u>, 997 F. Supp. 585, 592 (D.N.J. 1998) (finding that "it is proper to fold [damages] claims into the <u>Brillhart</u> analysis" where the damages claims are "clearly dependent on the declaratory relief" the plaintiff seeks).

This Court reasons otherwise based on the weight of authority from other Courts of Appeals (the Third Circuit has not directly addressed the issue).  Those decisions hold that

Brillhart abstention only applies in *purely* declaratory judgment actions.  See Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc., 408 F.3d 248, 250-52 (5th Cir. 2005) (reversing the application of Brillhart to an insurance company's complaint seeking "a declaration of its rights and liabilities under insurance policies issued to [the insured] as well as restitution for amounts it paid to defend or indemnify [the insured]," because Brillhart applies only to "purely declaratory" suits); United States v. City of Las Cruces, 289 F.3d 1170, 1171 (10th Cir. 2002) (citing with approval a Fifth Circuit case "holding that in a suit seeking coercive relief as well as declaratory relief, [the] broad Brillhart standard [is] inappropriate"); Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874, 879 (8th Cir. 2002) ("The district court did not have discretion to abstain under Brillhart" because "Brillhart applies to declaratory judgment actions generally, but not to actions that, like this one, [also] involve good faith claims for injunctive relief"); Village of Westfield v. Welch's, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (applying only Colorado River, and not Brillhart, because "[a]lthough [plaintiff] did seek a declaration of rights under" a contract at issue, its "federal action did not seek purely declaratory relief," since plaintiff also requested monetary relief); Snodgrass v. Provident Life and Accident Ins. Co., 147 F.3d 1163, 1167 (9th Cir. 1998) ("[W]hen other claims are joined with an action for declaratory relief . . . the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." (internal quotations omitted)); see also The Hutchinson Group, Ltd. v. Am. Int'l Specialty Lines Ins. Co., No. 05-1745, 2006 U.S. Dist. LEXIS 36349, at *10-12 (W.D. Pa. June 5, 2006) (following the above cases and applying only Colorado River to a complaint seeking coercive and declaratory relief).  So long as the claims for injunctive or monetary relief were not frivolous, and there was no evidence that they were added in order to prevent the application of

Brillhart abstention, these circuits applied Colorado River to the entire complaint.  See, e.g.,

Kelly Inv. v. Cont'l Common Corp., 315 F.3d 494, 497 (5th Cir. 2003) ("[Plaintiff's] claims for

coercive relief are not frivolous, and there is no evidence that [Plaintiff] added them solely as a

means of defeating Brillhart.  Therefore, Colorado River provides the appropriate abstention

standard.").

    Brenner does not argue that Hartford's claims for monetary relief are frivolous, and there

is no evidence that these claims were added in order to defeat Brillhart abstention.  In fact,

Hartford's original complaint asserted monetary relief claims only against Rosenfeld and North

Shore; its declaratory relief claims against Brenner were added later.  (Compare Docket Index

No. 1, with Docket Index No. 17; see Del Mauro Cert, ¶ 38.)  The Court concludes that Brillhart

abstention is not applicable.

    **D.    *Colorado River* Abstention**

        **1.    Parallel Proceedings**

    The parties do not dispute that the Colorado River abstention test may be applied to the

claims in Hartford's complaint.  That test first requires the existence of a "contemporaneous

parallel judicial proceeding."  IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d

298, 306 (3d Cir. 2006).  The parties and claims in the federal and state cases need not be

completely identical in order to be parallel.  Id.  It is only required that there be "*substantial*

identity of parties and claims."  Id. (emphasis added); see also Yank v. Tsui, 416 F.3d 199, 205

(3d Cir. 2005) ("Parallel cases involve the same parties and substantially identical claims, raising

nearly identical allegations and issues" (internal quotations omitted)).

    Hartford contends that Brenner's New York case is not parallel with this proceeding

because the parties and the claims are different:  Rosenfeld and North Shore are not parties to the

9

New York state action; and the fraudulent misrepresentation and negligence claims Hartford has asserted against Rosenfeld and North Shore do not exist in the New York case either.[4]

Examining this contention, the Court notes that despite the addition of Rosenfeld and North Shore, there is substantial identity of parties here.  In Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 219 (3d Cir. 1994), the federal plaintiff, Trent, filed a class action complaint alleging negligence against a medical center.  Trent was at the same time a member of a similar class action filed in state court against the medical center and two of the center's medical directors.  Id. at 219-20.  Despite the existence of additional defendants in the state action, the Third Circuit affirmed the district court's finding that the cases were parallel.  Id. at 224-25.  The Court did not find this difference in parties troubling because abstention would not deny Trent the chance to assert his claims against the medical center in the state action.  Id. at 224. Although in this case, the additional defendants are parties to the federal, not the state, action, there appears to be no reason why Hartford could not have simply filed a third-party complaint against Rosenfeld and North Shore in the New York action, since both are citizens of New York.

Furthermore, a holding that the addition of defendants in the federal suit eliminates the parallel nature of the cases would permit a federal plaintiff to "avoid the doctrine of Colorado River by the simple expedient of naming additional parties."  Interstate Material Corp. v. Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988) (citing Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1985) ("While Colorado River is considerably more limited in scope

---

[4] Hartford alleges that a third difference exists between the cases.  It points out that Brenner asserted a breach of contract claim in the New York action, and that this cause of action is not present in this case.  This Court rejects this "difference" out of hand.  Brenner has yet to have a chance to file any counterclaims in this case, since he filed the instant motion to abstain in lieu of filing an answer.

than the doctrines of res judicata and collateral estoppel, like them its impact cannot be obliterated by the stroke of a pen" (citing 1B Moore's Federal Practice ¶ 0.411[1] (1984))). Thus, this Court finds that there is substantial identity of the parties.

Second, the claims asserted in the two actions are also substantially identical. Hartford asserts here that Brenner is liable for fraudulent misrepresentation under the IFPA (count five), and breach of contract (count six), and seeks restitution of benefits paid, damages, and a declaration that the Policy is void due to Brenner's breach.  In the alternative, Hartford seeks a declaration that the pre-existing condition clause of the Policy is valid and bars Brenner's claims for benefits (count seven).

In the New York state case, Hartford asserts counterclaims against Brenner for fraudulent misrepresentation under the common law (count one) and under the IFPA (count two), breach of contract (count three), again seeking restitution of paid benefits, damages, and a declaration that the Policy is void due to Brenner's breach.  In the alternative, Hartford seeks a declaration that the pre-existing condition clause of the Policy is valid and bars Brenner's claims for benefits (count four).

Manifestly, the federal and state claims are nearly identical.  Indeed, Hartford's pleadings use much of the same language, with the minor difference that in the federal lawsuit, Hartford asserts fraudulent misrepresentation against Brenner only under the IFPA and does not raise a common law claim as in the New York state case.  This difference is inconsequential since the claim that would be stayed or dismissed also exists in the state action.  In any event, such a slight difference in claims is not enough to destroy the parallel nature of the cases.  See Trent, 33 F.3d at 219-20, 225 (finding the cases parallel despite that the federal case only involved a negligence

11

claim, and the state case involved negligence, outrageous conduct, wrongful death, and survival claims).

Additionally, the causes of action in both cases, including the misrepresentation and negligence claims against Rosenfeld and North Shore, are grounded on the identical alleged conduct and on the same insurance policy. Therefore, the same evidence will be at issue in both cases, which weighs in favor of the identity of the claims. See Tyrer v. City of S. Beloit, 456 F.3d 744, 752-53 (7th Cir. 2006) ("[T]wo actions are 'parallel' where the underlying issues are the same, even if they have been repackaged under different causes of action." (internal quotations omitted)).

Accordingly, this Court finds that Brenner's suit against Hartford in the Supreme Court of New York is a contemporaneous parallel judicial proceeding.

### 2.    **Exceptional Circumstances**

Once it has been determined that a state proceeding is parallel, the district court must then decide whether "exceptional" circumstances exist, permitting the court to abstain from the federal suit. See Colorado River, 424 U.S. at 818. The relevant factors to examine include (1) whether the case involves the Court's exercise of jurisdiction over property; (2) "the inconvenience of the federal forum"; (3) "the desirability of avoiding piecemeal litigation"; (4) "the order in which jurisdiction was obtained by the concurrent forums," id.; (5) whether state or federal law provides the rule for decision; and (6) whether the state court can adequately protect the rights of the parties, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983).

Using these factors, this Court must come to a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise" of jurisdiction.  Colorado River, 424 U.S. at 818.  Significantly, that "balance is heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.  When examining the factors, this Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction . . . [but] rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."  Id. at 25-26.  Thus, where a factor fails affirmatively to support retaining jurisdiction, it does not necessarily weigh in favor of abstention, because the Court is already working from a presumption that it has a "virtually unflagging obligation" to exercise its jurisdiction.  See Ryan v. Johnson, 115 F.3d 193, 198 (3d Cir. 1997).

### a.   Which Court First Assumed Jurisdiction Over Property

There is no property at issue in this case that this Court or the New York state court must assume jurisdiction over.  Contrary to Brenner's assertion that this factor is therefore irrelevant, the presence of a neutral factor necessarily weighs against abstention.  See North River Ins. Co. v. Middlesex Assurance Co., 1989 U.S. Dist. LEXIS 16552, at *8 n.3 (D.N.J. Aug. 7, 1989).

### b.   The Inconvenience of the Federal Forum

The inconvenience of the federal forum factor is primarily "concerned with the physical proximity of the federal forum to the evidence and witnesses."  See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 15 (1st Cir. 1990); see also Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1191 (5th Cir. 1988) (stating that Colorado River and Moses H. Cone "indicate

13

that the inconvenience factor primarily involves the physical proximity of the federal forum to the evidence and witnesses" and the "availability of compulsory process").

Brenner first argues that the District of New Jersey is an inconvenient forum because of the additional time, cost, and expense necessary to litigate two parallel actions.  These concerns do not weigh in favor of abstention.  The "inconvenience" of the cost of maintaining two lawsuits is necessarily present in every case of parallel proceedings.  If such costs always weighed in favor of abstention, the inconvenience factor would swallow the presumption that the district courts must exercise jurisdiction over parallel proceedings.  The inconvenience of the cost of double-litigation arises from the state suit just as much as it arises from the federal suit, especially since the law presumes that parallel proceedings are permissible and gives no special credit to which case was filed first.

Brenner next contends that the New York Supreme Court's August 15, 2006 ruling denying Hartford's motion to dismiss for *forum non conveniens*, mandates that New York is the more convenient forum.  The New York court only found, however, that New York is not inconvenient.  It did not find that New Jersey is inconvenient, or any less convenient than New York.

 Next, Brenner argues that New Jersey is inconvenient because his counsel are located in Garden City, Long Island, New York, and must travel to Newark, New Jersey to defend this case.  This Court rejects this argument as well.  The inconvenient forum factor is concerned with "the relative inconvenience of the competing fora to the parties, not to their lawyers."  AAR Int'l, Inc. v. Nimelias Enters. S.A., 250 F.3d 510, 522-23 (7th Cir. 2001).

This Court also does not accept Brenner's claim that New Jersey is inconvenient because Brenner, his co-defendants, and most of the witnesses are allegedly New York residents, because relevant documentary evidence is located in New York, and because the transactions at issue allegedly took place in New York.  Accepting all of Brenner's contentions as true, these facts do not render New Jersey inconvenient.  First, Brenner admits that he resides in New Jersey in addition to New York.  (See Pl.'s Br. 4.)  Second, Brenner does not contend that any evidence or witnesses in New York lie outside of this Court's compulsory process power.  Third, the distance between New York and New Jersey is not great enough to impose hardship on Brenner.  In McMurray v. De Vink, the Third Circuit rejected the defendants' argument that their residency in Delaware rendered litigating in federal court in Newark, New Jersey, inconvenient.  "New Jersey and Delaware are neighboring states," the Third Circuit pointed out.  "Even if we were to assume that the participants must travel to New Jersey from the most distant part of Delaware, we would be hard put to define the resultant travel as imposing such a hardship that a federal court in New Jersey would be inconvenient for purposes of Colorado River."  McMurray v. De Vink, No. 01-1346, 2002 U.S. App. LEXIS 25966, at *15 (3d Cir. Jan. 3, 2002).

Here, New York and New Jersey are neighboring states, and Brenner has not found it inconvenient to litigate before the Supreme Court of New York, which is located at 60 Centre Street in Manhattan.  (See Del Mauro Cert., Ex. Y, at 6.)  This case is taking place only 10 and a half miles away at 50 Walnut St., Newark, New Jersey.[5]  Furthermore, Brenner is not a stranger to this courthouse.  From December 2000 until August 2006, Brenner filed and litigated a case in

---

[5] This Court takes judicial notice of this fact, which was obtained from Google Maps (http://www.google.com/maps).  Cf. Saco v. Tug Tucana Corp., 483 F. Supp. 2d 88 n.4 (D. Mass 2007) (taking judicial notice that "the distance between Manchester and Peabody is 13.34 miles" as reflected on www.mapquest.com).

the District of New Jersey, Newark vicinage.  <u>See</u> Civil Action No. 00-6051 (WGB); <u>Tenafly</u>

<u>Eruv Ass'n., Inc. v. Borough of Tenafly</u>, 155 F. Supp. 2d 142 (D.N.J. 2001), *rev'd*, 309 F.3d 144

(3d Cir. 2002) (noting that at the time of appeal "Stephen Brenner . . . was building a house in

Tenafly[, New Jersey] and planned to move there once it was completed").  In fact, Brenner filed

this motion to abstain on July 10, 2006 – a  month *before* the last docket entry in the <u>Tenafly</u>

case on August 30, 2006.  (No. 00-6051, Docket Index No. 90.)   That Brenner finds Newark

inconvenient when he is a defendant, is "convenient" for argument's sake, but hardly persuasive.

### c.    <u>Avoiding Piecemeal Litigation</u>

Brenner argues that the risk of inconsistent judgments between the state and federal court

and the inefficiency that would result, weigh in favor of this Court abstaining in order to avoid

piecemeal litigation.  However, "in considering whether the concern for avoiding piecemeal

litigation should play a role in [the granting of a stay], the district court must look beyond the

routine inefficiency that is the inevitable result of parallel proceedings to determine whether

there is some exceptional basis for requiring the case to proceed entirely in the [state] court.'"

<u>Burns v. Watler</u>, 931 F.2d 140, 146 (1st Cir. 1991) (internal quotations omitted) (alternations in

original) (finding no "exceptional basis" because the "case present[ed] a straightforward

application of state negligence laws and, thus, the possibility that harsh, contradictory or unfair

consequences w[ould] result [was] slim").  The Supreme Court and the Third Circuit have made

clear that the "avoidance of piecemeal litigation" factor weighs in favor of abstention "only

when there is evidence of a strong federal policy that all claims should be tried in the state

courts."  <u>Ryan</u>, 115 F.3d at 197-98.  The "mere possibility of piecemeal litigation" is not enough.

<u>Id.</u> at 198.

For example, in <u>Colorado River</u>, the Supreme Court upheld the district court's abstention from hearing a suit filed by the United States for a declaration of its water rights against a group of water users, in light of a state court action filed by one of the federal defendants that sought to join the United States as a party under the McCarran Amendment, 43 U.S.C. § 666. 424 U.S. at 819. The Court found that because the McCarran Amendment allowed "the United States to be deprived of its right to adjudication in a federal forum," there "was evidence of a clear federal policy that the state court systems were the preferred means for avoiding the piecemeal adjudication of water disputes." <u>Ryan</u>, 115 F.3d at 196-97 (citing <u>Colorado River</u>, 424 U.S. at 819).

Conversely, in <u>Ryan</u>, the Third Circuit declined to abstain from hearing a parallel personal injury case despite the existence of a limited insurance fund to satisfy the tort claims of the dozens of injured plaintiffs, and the resulting risk that the first judgment obtained could greatly deplete this fund. 115 F.3d at 199. The Court stated that these factors were insufficient to satisfy the piecemeal litigation factor because no Congressional policy existed indicating that such situations should be litigated solely in state court. <u>Id.</u> The Third Circuit stressed that, "[t]he presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." <u>Id.</u> at 198; <u>see also</u> <u>Kentucky West Va. Gas Co. v. Penn. Public Utility Comm'n</u>, 791 F.2d 1111, 1118 (3d Cir. 1986) (denying abstention, in part because "the [defendant] has not pointed to any Congressional legislation like the McCarran Amendment in Colorado River that evinces a tempering of the policy of enforcing the plaintiff's choice of a federal forum in favor of a policy of avoiding duplicative or inconvenient litigation" (internal quotations omitted)).

17

Here, Brenner has demonstrated no evidence of a Congressional policy favoring state-court resolution of the issues presented in this case: New Jersey choice-of-law, state contract law, and the NJ IFPA.  To resolve this dispute, the Court will first have to determine whether the law of New York or New Jersey applies to Hartford's common law contract claims.  New Jersey's choice-of-law rules state that in a contract case, the law of the jurisdiction "'having the most significant relationship to the parties and to the transaction'" applies.  Dopp v. Yari, 927 F. Supp. 814, 818 (D.N.J. 1996) (quoting Caribe Hilton Hotel v. Toland, 63 N.J. 301 (1973)).  The parties dispute whether the insurance policy was solicited and executed in New York or New Jersey.  Brenner has pointed to no Congressional policy that this factual determination should be made in state court.

Once the proper state law is chosen, this case will require the application of either New York or New Jersey contract law, and the NJ IFPA.  Brenner has not argued that any federal policy exists stating that state court is the preferred means for settling such disputes.  In the absence of such a federal policy, the avoidance of piecemeal litigation factor is no help to a party seeking abstention.  See Ryan, 115 F.3d at 198-99; Kentucky West Va. Gas Co., 791 F.2d at 1118.  As in Ryan, this case presents only "garden-variety state law issues."  115 F.3d at 198.

Brenner argues that Hartford filed this lawsuit in New Jersey federal district court in order to shop for a forum that would apply possibly more favorable New Jersey state contract law relating to insurance contract incontestability clauses, and to dodge New York state law that would allegedly be detrimental to Hartford's case.  This accusation rings hollow, however, in light of the fact that this Court could determine under New Jersey's choice-of-law rule that New York has the most significant relationship to the parties and the transaction, and thus, that New

18

York law applies.  Additionally, had Hartford filed this case in New York federal or state court,
New Jersey law could apply anyway under New York's choice-of-law rule for contract cases,
which is similar to New Jersey's rule.  See, e.g., Olin Corp. v. E.I. Dupont de Nemours & Co.,
2007 U.S. Dist. LEXIS 12644, at *8 n.6 (W.D.N.Y. Feb. 23, 2007) ("In contract cases, New
York courts apply a 'center of gravity' or 'grouping of contracts' approach under which courts
may consider a spectrum of significant contacts to decide choice of law questions, including the
place of contracting, the places of negotiation and performance, the location of the subject
matter, and the domicile or place of business of the contracting parties." (internal quotations and
citations omitted)).

Even assuming that Hartford filed this suit in an attempt to forum shop, Brenner points to
no federal policy stating that a federal court should abstain from hearing such a case due to the
possibility that inefficient, piecemeal litigation may result.  Accordingly, the Court rejects
Brenner's contentions and concludes that the "piecemeal litigation" factor does not favor
abstention.

### d.      The Order in Which Jurisdiction Was Obtained

Brenner argues that abstention is favored here because he filed his New York state action
two years before Hartford filed the instant suit.  However, the "order in which jurisdiction was
obtained factor" does not "turn upon 'which complaint is filed first, but rather [on] . . . how
much progress has been made in the two actions.'"  McMurray, 2002 U.S. App. LEXIS 25966,
at *14 (quoting Moses H. Cone, 460 U.S. at 21).  As to that, the parties dispute which case has
made more progress.  According to Brenner, the New York Supreme Court is currently
considering his motion for summary judgment, which of course, could be dispositive of that
case.  (Docket Index No. 51-2, ¶ 2.)  Here, the parties have until September 2007 to complete

fact discovery.  (Docket Index No. 39.)  While this might support Brenner's position that the New York action has progressed further, one could argue that this abstention motion likewise could be dispositive.  So each case has a pending motion that could result in either its advancement or its abrupt end.  Accordingly, the Court concludes that neither case has outdistanced the other sufficiently to tip the "order in which jurisdiction was obtained" factor in either party's favor.

### e.   <u>Whether Federal or State Law Controls</u>

This case involves only state law issues; however, this fact does not weigh in favor of abstention.  The Third Circuit, paraphrasing <u>Moses H. Cone</u>, has explained that "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law."  <u>Ryan</u>, 115 F.3d at 199 (citing 460 U.S. at 26).  The <u>Ryan</u> Court further explained that this is especially true where a case only involves the straight forward application of well-settled state law.  <u>Id.</u> at 200.  Similarly here, the state law at issue does not appear to be "so intricate and unsettled that resolution in the state courts might be more appropriate."  <u>See id.</u>  Both parties in this case accuse the other of forum shopping in order to have either the law of New York or New Jersey applied to the insurance contract.  Thus, it would appear that both sides believe that the relevant law of each state is settled enough to permit this kind of tactical maneuvering in reliance on that law.  Thus, this factor fails to weigh in favor of abstention.

### f.   <u>Whether the State Court Will Adequately Protect the Interests of the Parties</u>

Finally, Brenner argues that because all of Hartford's claims in federal court also exist in the New York case, the parties' interests will be adequately protected in state court.  However,

"the mere fact that the state forum is adequate does not counsel in favor of abstention" given the presumption in favor of exercising jurisdiction.  Ryan, 115 F.3d at 200.  This factor is only relevant "when the state forum is *in*adequate."  Id.  Accordingly, this factor also fails to weigh in favor of abstention here.

In sum, no factor weighs in favor of abstention.  Even if the "order in which jurisdiction was obtained" factor leaned towards abstention, it is not enough to overcome the strong presumption in favor of exercising jurisdiction over this case.  See, e.g., McMurray, 2002 U.S. App. LEXIS 25966, at *14-16 (reversing district court's decision to abstain where the only factor in favor of abstention was that the state case had made more progress than the federal case).  Because exceptional circumstances do not exist here, this Court will not dismiss or stay this case under the Colorado River abstention doctrine.

## III.  **Conclusion**

For the foregoing reasons, Brenner's motion to abstain requesting either dismissal or a stay of the proceedings is denied.


Dated:  August 1, 2007                           /s/   Katharine S. Hayden

                                                 Katharine S. Hayden, U.S.D.J.